IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-01177-LTB-PAC

JAMES E. HURLEY,

    Applicant,

v.

W.A. SHERROD, Warden,

    Respondent(s).

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Patricia A. Coan, United States Magistrate Judge

    The matter before the court is James Hurley's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. §2241 [filed June 24, 2005]. The Application is fully briefed and has been referred to the undersigned for Recommendation.

    This action arises from an earlier §2241 proceeding, Civil Action No. 04-cv-02492-LTB-PAC, in which Mr. Hurley's application for habeas relief was granted. The court ordered the Respondent to reconsider Applicant's request for placement in a Community Corrections Center in accordance with the Bureau of Prison's (BOP) discretionary authority under 18 U.S.C. §3621(b). *See* May 2, 2005 Order in Civil Action No. 04-cv-02492-LTB-PAC. Applicant now challenges Respondent's May 2005 reconsideration decision denying Applicant a transfer to community confinement before the last ninety days of his sentence.

I.

    Applicant is incarcerated at the Federal Prison Camp ("FPC") in Englewood, Colorado, serving a thirty-seven month sentence for mail fraud, followed by a three-year

term of supervised release. Applicant's projected release date with good time credits is February 2, 2006.

A.  History of Proceedings in Civil Action No. 04-cv-02492-LTB-PAC

At some time before November 12, 2004, Applicant wrote to Respondent asking that he be considered for placement in a Community Corrections Center ("CCC"). The Warden instructed Applicant to submit his request to his unit team. Applicant's unit team advised him on November 12, 2004 that he would not be considered for CCC placement before November 7, 2005, pursuant to a December 13, 2002 Memorandum issued by the United States Department of Justice Office of Legal Counsel ("OLC"). The December 13, 2002 OLC Memorandum concluded that the BOP's practice of designating an inmate for CCC placement for the last six months of the inmate's prison term was unlawful because 18 U.S.C. §3624(c) restricted CCC placement to the lesser of the last ten percent of the sentence imposed on the offender, or six months. On December 20, 2002, the BOP instituted a CCC placement policy consistent with the OLC Memorandum.

In Civil Action No. 04-cv-02492-LTB-PAC, Applicant claimed that the December 2002 CCC placement policy was an unreasonable and impermissible interpretation of the BOP's discretionary authority under 18 U.S.C. §3621(b) for placement of federal inmates in a CCC for any amount of time the BOP deemed appropriate. Applicant asked the court to order the BOP to consider him for transfer to a CCC, pursuant to its discretionary authority under 18 U.S.C. §3621(b), before the last ten percent of his prison term.

On March 28, 2005, the undersigned recommended that the Applicant's request for habeas corpus relief be granted because the BOP's December 2002 CCC placement policy

interpreted 18 U.S.C. §3621(b) in a manner that was contrary to the plain meaning of the statute and was therefore not entitled to judicial deference.  *See Reno v. Koray*, 515 U.S. 50, 61 (1995)(holding that where Congress has delegated authority to an agency to implement and administer a statute, the agency's interpretation of that statute is afforded "some deference" so long as it constitutes a permissible construction of the statute")(internal citations omitted).  I recommended a finding that Section 3624(c) does not limit the BOP's discretionary authority under §3621(b) to transfer a federal inmate to a CCC at any time during the inmate's term of imprisonment.

On May 2, 2005, the Chief District Judge adopted the March 28, 2005 Recommendation and ordered the Respondent to "reconsider the application for CCC placement in accordance with his discretionary authority under 18 U.S.C. §3621(b) within 30 days from the date of this order."  May 2, 2005 Order.

Respondent advised the court on June 1, 2005 that Applicant had been reconsidered for CCC Placement pursuant to the Court's May 2, 2005 Order.  *See* Respondent's Notice to Court that Applicant has been Reconsidered for CCC Placement Pursuant to the Order Dated May 2, 2005.  In a letter addressed to Chief Judge Babcock, dated May 25, 2005, Warden Sherrod (the new warden at FCI Englewood) stated that Applicant's unit team reviewed Applicant's request for CCC placement in light of the factors set forth in 18 U.S.C. §3621(b) and determined that a period of approximately ninety days of community confinement was appropriate. *See* May 25, 2005 Letter from Warden Sherrod to Chief Judge Babcock, attached to Respondent's Filing of Original Letter with Court Stating that the Applicant has been Reconsidered for CCC Placement Pursuant to the

Order Dated May 2, 2005.

B.     The Instant §2241 Proceeding

Applicant claims that the BOP did not exercise its discretionary authority under 18 U.S.C. §3621(b) in reconsidering his request for CCC placement because staff failed to consider the relevant statutory factors. Applicant asserts that the May 2005 decision not to grant him earlier CCC placement "is a veiled application of the 10% rule under either (1) the new regulation effective 2/14/05 set forth in 28 C.F.R. §570.21, or (2) the December, 2002 OLC directive which this court found improper and inapplicable to Applicant in Hurley v. Norwood." Application, at 3. Applicant asks the court to "direct[ ] the Respondent to transfer Applicant to a CCC placement as authorized under Respondent's discretionary authority in 18 U.S.C. §3621(b)." Application at 5. Alternatively, Applicant requests, under Fed.R.Civ.P. 70, that this court "name an individual to conduct the review of Applicant's reconsideration for CCC placement," because Respondent failed to comply with the court's May 2, 2005 Order in *Hurley v. Norwood.*

II.

Respondent argues that Applicant lacks Article III standing to bring this habeas action because he has not suffered an injury-in-fact. *See Committee to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 447 (10th Cir. 1996). Respondent also argues that the Application should be dismissed because Applicant failed to exhaust his administrative remedies before seeking federal habeas corpus relief. Respondent raised both arguments in Civil Action No. 04-cv-02492-LTB-PAC and they were rejected by the court. *See* May 2, 2005 Order, at 1.

I recommend a finding that Applicant has standing to challenge the May 2005 decision denying him CCC placement before the last ninety days of his federal sentence because if the court finds that Respondent failed to exercise his discretionary authority in accordance with 18 U.S.C. §3621(b), Applicant may be entitled to additional habeas relief.

Further, I decline to recommend dismissal of the Application for failure to exhaust administrative remedies because requiring Applicant to complete the administrative process would be futile. The new federal regulation which Respondent asserts as a defense to this action, 28 C.F.R. §570.21, prohibits the BOP from referring inmates to community confinement before the last ten percent of their sentence (not to exceed six months). The regulation does not provide for deviation from that period unless a specific BOP program provides for a greater period of community confinement. *See* 28 C.F.R. §570.21(b). Respondent does not allege that any such programs are available to Applicant. Accordingly, it does not appear that administrative relief is even a possibility. *See Pimentel v. Gonzales*, 367 F.Supp. 365, 371-72 (E.D.N.Y. 2005)(excusing exhaustion requirement for prisoner who challenged validity of 28 C.F.R. §570.21 as futile); *United States v. Paige*, 369 F.Supp.2d 1257, 1260 (D.Mont. 2005)(same).

III.

A.   Applicability of 28 C.F.R. §570.21 to Reconsideration Decision

A new regulation, effective February 14, 2005, provides that the BOP will "designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months." 28 C.F.R. §570.21. The Bureau promulgated the new rule as a categorical exercise of its

5

discretion under 18 U.S.C. §3621(b) for designating inmates to community confinement, in response to court decisions invalidating its CCC placement policy derived from the December 13, 2002 OLC Memorandum.  69 Fed. Reg. 51,213; 70 Fed. Reg. 1659; 28 C.F.R. §570.20.

Applicant urges the court to disregard the new regulation in this action because it was not in effect at the time the BOP denied his original request for CCC placement in November 2004, and therefore should not apply to the BOP's May 2005 reconsideration decision which was necessitated by the BOP's prior application of an illegal policy. Respondent maintains that the new regulation bars Applicant's request for habeas corpus relief.

In Civil Action No. 04-cv-02492-LTB-PAC, the court ordered Respondent to "reconsider the application for CCC placement in accordance with his discretionary authority under 18 U.S.C. §3621(b) within 30 days from the date of this order."  May 2, 2005 Order.  The new federal regulation purports to be a categorical exercise of the BOP's discretionary authority to designate a federal inmate's place of imprisonment under 18 U.S.C. §3621(b), considering: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) statements by the court that imposed the sentence; and, (5) pertinent policy statements issued by the Sentencing Commission. The regulation precludes designation of an inmate to a CCC prior to the lesser of six months or the last ten percent of the inmate's sentence, but allows the BOP discretion to determine the date of transfer within that period.

Because 28 C.F.R. §570.21 was in effect at the time Respondent and FPC

6

Englewood staff reconsidered Applicant's request for CCC placement, the regulation, if valid, governs the disposition of this proceeding.

There is a split of authority in the federal district courts about the validity of 28 C.F.R. §570.21.[1] Some have concluded that the 2005 regulation is a permissible construction of the BOP's discretionary authority under 18 U.S.C. §3621(b), pursuant to the Supreme Court's decision in *Lopez v. Davis*, 531 U.S. 230 (2001). *See, e.g., Yip v. Federal Bureau of Prisons*, 363 F.Supp.2d 548, 551-52 (E.D.N.Y. 2005); *Moss v.* Apker, 376 F.Supp.2d 416, 423-24 (S.D.N.Y. 2005); *Bialostok v. Apker*, 2005 WL 1946480 (S.D.N.Y. 2005); *Jackson v. Federal Bureau of Prisons*, 2005 WL 1705775 at **8-9 (D.N.J. 2005). Other courts have declared 28 C.F.R. §570.21 to be invalid on the ground that the regulation disregards the factors set forth in 18 U.S.C. §3621(b) and thus suffers from the same infirmities as the December 2002 policy. *See Paige*, 369 F.Supp. at 1262-63; *Pimentel*, 367 F.Supp. at 375-76; *Drew v. Menifee*, 2005 WL 525449 at *4 (S.D.N.Y. 2005); *Cook v. Gonzales*, 2005 WL 773956 at *4 (D. Or. 2005).

I agree with those courts that have concluded that the 2005 regulation is a reasonable and permissible construction of the BOP's discretionary authority under 18 U.S.C. §3621(b).

In *Lopez*, the Supreme Court addressed the validity of the BOP's regulation implementing 18 U.S.C. §3621(e)(2)(B). Section 3621(e)(2)(B) confers discretionary authority on the BOP to reduce by up to one year the prison term of an inmate convicted

---

[1] I note that the 2005 regulation was promulgated in compliance with the notice and comment requirements of the Administrative Procedure Act, 5 U.S.C. §533. *See* Proposed Rule, 69 Fed. Reg. at 51, 213 (giving notice of and requesting comments on the proposed rule); Final Rule, 70 Fed. Reg. at 1659 (responding to comments on proposed rule and adopting final rule).

of a nonviolent felony, if the inmate successfully completed a substance abuse program. The regulation, 28 C.F.R. §550.58(a)(1)(vi)(B), categorically denies early release to prisoners whose current offense is a felony attended by "the carrying, possession, or use of a firearm." Thus, while the statute categorically denies early release eligibility to offenders convicted of violent offenses, the BOP adopted an additional category of ineligible inmates - those whose current offense is a felony involving a firearm.

The Supreme Court held that the BOP's implementing regulation was a permissible exercise of the Bureau's discretion under 18 U.S.C. §3621(e)(2)(B).

First, the Supreme Court found that because the statute did not prescribe the conditions under which the BOP's authority to grant early release to nonviolent offenders should be exercised, *id.* at 241, the Bureau need only "fill[ ] the statutory gap `in a way that is reasonable in light of the legislature's revealed design.'" *Id.* at 242 (quoting *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995)). The Court concluded that the agency acted reasonably in determining that possession of a firearm in connection with a felony suggests a readiness to endanger another's life and in categorically excluding those inmates from early release eligibility. *Id.* at 244.

The Supreme Court rejected the petitioner's contention that the BOP may not make categorical exclusions, but must rely only on individualized assessments. *Id.* at 243. "`[E]ven if a statutory scheme requires individualized determinations, . . . the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority.'" *Id.* at 244 (quoting *American Hosp. Ass'n v. NLRB,* 499 U.S. 606, 612 (1991)). Nothing in Section

8

3621(e)(2)(B) restricts the BOP's authority to exercise its discretion through rule making. The Supreme Court thus held that the BOP may categorically exclude prisoners from early release based on their preconviction conduct.  *Id.*

Like the regulation at issue in *Lopez*, 28 C.F.R. §570.21 represents a categorical exercise of the Bureau's statutory discretion. The BOP "has identified a category of prisoners – inmates who are not yet required to be considered for transfer to a CCC under Section 3624(c),[2] but are eligible under Section 3621(b) – and created a rule denying transfers to all of them."  *Yip* 363 F.Supp.2d at 552.  Under *Lopez*, the regulation is valid if it is a reasonable interpretation of §3621(b) and Congress did not "clearly express[ ] an intent to withhold [the BOP's] authority" to regulate its discretion under §3621(b) through adoption of a categorical rule.

I recommend a finding that the BOP's interpretation of 18 U.S.C. §3621(b) is reasonable. The statute does not require the BOP to place an inmate in a CCC at any time. Instead, the statute confers discretion on the BOP to designate an inmate's place of imprisonment and sets forth five factors for consideration in making such determinations. The BOP has stated that the agency considered each of the five statutory factors in drafting the regulation.  *See* Proposed Rule, 69 Fed. Reg. 51, 214 ("In deciding to limit inmates'

---

[2] 18 U.S.C. §3621(c) entitled "Pre-release custody," provides, in relevant part:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

9

community confinement to the last ten percent of the prison sentence, not to exceed six months, the Bureau has carefully considered all of the statutorily-specified factors, as well as the additional considerations that it identified as pertinent.")

Moreover, the BOP will continue to consider the five statutory factors when designating or transferring inmates to correctional facilities. *See* Final Rule, 70 Fed. Reg. at 1660 ("The Bureau will continue to evaluate [the factors set forth in Section 3621(b)] when making individual designations to appropriate Bureau facilities, and this rule will not adversely effect such individualized determinations.").

Those courts which have struck down the 2005 regulation for failing to consider all five of the factors in §3621(b) have ignored the BOP's express statements to the contrary in the rule making process.  This court finds no reason to disregard the BOP's representations that all the statutory factors were considered in promulgating the rule. Although the proposed rule substantively discusses only two of the statutory factors – facility resources and policy statements issued by the Sentencing Commission – and addresses additional factors such as avoiding favoritism, nothing in the statute dictates the weight the agency must accord each factor, or prevents the Bureau from considering other relevant factors. *See* S.Rep. 98-225, 1984 U.S.C.C.A.N. 3182, 3325 ("The Committee, by listing factors for the Bureau to consider in determining the appropriateness or suitability of any available facility, does not intent to restrict or limit the Bureau in the exercise of its existing discretion . . ."). Indeed, the statute specifically prohibits the BOP from favoring prisoners of high social or economic status in designating an inmate's place of imprisonment or in making transfers.  18 U.S.C. §3621(b).

The next question under *Lopez* is whether the BOP's categorical denial of CCC placement to all federal prisoners prior to the last ten percent of their sentences, not to exceed six months, conflicts with any Congressional directive. *See Lopez*, 531 U.S. at 244. Nothing in §3621(b) prohibits the Bureau from regulating its statutory discretion through the promulgation of categorical rules.

Accordingly, I recommend a finding that 28 C.F.R. §570.21 is a reasonable and permissible construction of the BOP's discretionary authority to designate the place of a prisoner's imprisonment under 18 U.S.C. §3621(b).

Applicant suggests that application of the 2005 regulation to him violates the Ex Post Facto Clause of the United States Constitution. *See* Applicant's August 23, 2005 Supplemental Response to Respondent's Answer.

The Ex Post Facto Clause, U.S. Constitution, Art. I, §10, cl. 1, prohibits the retroactive application of a law that alters the definition of criminal conduct or increases the punishment for the crime. *Lynce v. Mathis*, 519 U.S. 433, 441 (1997)(citation omitted)(holding that retroactive change in legislation that effectively postponed date when prisoner became eligible for early release ran afoul of ex post facto prohibition); *California Dep't of Corrections v. Morales,* 514 U.S. 499, 509 (1995)(holding that California statute which authorized the Board of Prison Terms to defer for up to three years parole suitability hearings for multiple murderers did not violate the Ex Post Facto Clause because the law "create[d] only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes.")

The 2005 Regulation does not alter the definition of Applicant's crime; thus, the

11

issue is whether application of the new regulation to Applicant would effectively increase the punishment for his crime.

The Ex Post Facto Clause does not "require that [a criminal] sentence be carried out under the identical legal regime that previously prevailed." *Morales*, 514 U.S. at 510 n.6.

The new regulation does not affect the length of Applicant's confinement. There is no evidence that designation to a CCC no earlier than the last ten percent of his sentence will impact Applicant's release date. Moreover, the purpose of the new regulation is not punitive. The BOP's stated intent was to exercise its discretion in designating inmates to community confinement in a manner that minimized the risk of disparate treatment, preserved CCC resources and was consistent with the Sentencing Commission's policies on CCCs. *See* 70 Fed. Reg. 1659 (January 10, 2005).

I recommend a finding that 28 C.F.R. §570.21 does not violate the Ex Post Facto Clause because the regulation is a mere change in the "legal regime" under which Applicant is serving his sentence rather than an increase in punishment for the Applicant's offense. *See Moss*, 376 F.Supp.2d at 425 (holding that 28 C.F.R. §570.21 does not violate the Ex Post Facto Clause because regulation serves a regulatory purpose, rather than a purpose of increasing the punishment associated with individual crimes); *see, also, Lee v. Governor of State of New York*, 87 F.3d 55 (2d Cir. 1996)(applying *Morales* and holding that state statute that removed correctional services commissioner's discretionary authority to allow certain classes of prisoners to participate in temporary release programs was not an ex post facto law because statute did not increase prisoner's punishment, but merely effected a change in the legal regime); *Dominique v. Weld*, 73 F.3d 1156, 1165 (1st Cir.

1996)(finding no ex post facto violation where prisoner was removed from the state's temporary release program due to new eligibility requirements because "the change in the conditions determining the nature of his confinement while serving his sentence was an allowed alteration in the prevailing `legal regime' rather than an `increased penalty' for ex post facto purposes."); *but cf. In re Medley*, 134 U.S. 160 (1890)(holding that retroactive application of a statute requiring solitary confinement for a capital offender prior to execution violated the Ex Post Facto Clause).[3]

The §2241 Application should be denied because 28 C.F.R. §570.21, which is a lawful categorical exercise of the BOP's discretion under 18 U.S.C. §3621(b), bars Applicant's request for CCC placement prior to the last ten percent of his sentence. The Respondent's May 2005 decision to deny Applicant CCC placement until the last ninety days of his sentence, based on the 2005 regulation, complied with this court's May 2, 2005 Order in Civil Action No. 04-cv-02492-LTB-PAC.

B.    Validity of Reconsideration Decision under Previous Policy

Alternatively, if 28 C.F.R. §570.21 is invalid, I recommend denial of the §2241 Application because Respondent complied with the court's May 2, 2005 Order in Civil Action No. 04-cv-02492-LTB-PAC.

Applicant contends that Respondent did not consider the factors set forth in 18

---

[3] I note that *In re Medley* was decided under former Supreme Court jurisprudence which held that an ex post facto violation may arise when a new law "alters the situation of the accused to his disadvantage." *In re Medley*, 134 U.S. at 171 (citing cases). However, in *Collins v. Youngblood*, 497 U.S. 37, 43, 50 (1990), the Supreme Court clarified that a change that "alters the situation of a party to his disadvantage" does not violate the Ex Post Facto Clause unless it also modifies the definition of a crime or increases the punishment for criminal acts. Accordingly, *In re Medley* has questionable, if any, precedential value.

U.S.C. §3621(b) in reconsidering Applicant's request for CCC placement.

Respondent relies on the Declaration of Jeffrey Butler, Applicant's unit manager at the FPC. Respondent submitted Butler's Declaration in response to Applicant's Motion under Rule 70, filed in Civil Action No. 04-cv-02492-LTB-PAC. Mr. Butler avers that he met with executive staff members on May 23, 2005 to discuss Applicant's CCC placement and staff determined, based on the factors set forth in 18 U.S.C. §3621(b), that the appropriate amount of time for Applicant to be placed in a CCC was ninety days. *See* Declaration of Jeff Butler, attached to Respondent's July 18, 2005 Answer to Minute Order Dated June 28, 2005 in Civil Action No. 04-cv-02492-LTB-PAC. Citing population pressures at CCC facilities, Butler stated that the BOP is endeavoring to use the CCCs for inmates who have the greatest need for transitional services, based on the inmate's length of incarceration, community and family support, financial resources, and employment prospects. *Id.;* May 25, 2005 Letter from Warden Sherrod to Chief Judge Babcock. Butler and other FPC staff concluded that Applicant's need for transitional services was not as great as other individuals because of Applicant's "substantial community, social, education, family and financial support," as well as the possibility of gainful employment opportunities. *Id.*; May 25, 2005 Letter from Sherrod to Chief Judge Babcock.

Butler made a written recommendation to the warden which he placed in letter form for the warden's signature. *Id.* The letter was signed by Warden Sherrod on May 25, 2005 and filed with the court in Civil Action No. 04-cv-02492-LTB-PAC.

The Section 3621(b) factors that are relevant to the BOP's discretionary decision to transfer a federal inmate from a correctional facility to a CCC at the end of his sentence (as

opposed to designating an inmate for CCC placement at the beginning of his sentence) are: the resources of the facility contemplated; the nature and circumstances of the offense; and, the history and characteristics of the prisoner. 18 U.S.C. §3621(b)(1), (2) and (3).

Respondent considered Applicant's history and characteristics in deciding to defer Applicant's CCC placement until the last ninety days of Applicant's sentence. 18 U.S.C. §3621(b)(3). Applicant does not refute his unit manager's sworn statements that Applicant has substantial community, social, education, family and financial support.

Respondent also considered the nature and circumstances of Applicant's offense. 18 U.S.C. §3621(b)(2). Applicant is eligible for CCC placement because he is not a convicted sex offender and did not commit an offense that suggests "a substantial or continuing threat to the community." *See* BOP Program Statement 7310.04, at 10-11 (issued December 16, 1998)(available at *www.bop.gov*).

Instead, Applicant argues that Respondent's non compliance with the court's May 2, 2005 Order is evidenced by Butler's failure to cite specific Dallas CCCs[4] that lack the resources to house Applicant. Applicant states in one of his many supplemental filings to his Rule 70 motion in Civil Action No. 04-cv-02492-LTB-PAC that "there is available bed space in one or more Dallas CCC facilities." *See* July 26, 2005 letter to Honorable Patricia A. Coan. Applicant argues that staff's reliance on "population pressures" at CCCs generally was inappropriate because that is not a factor for consideration under Section 3621(b).

---

[4] Applicant requests placement in a CCC in Dallas, Texas because he has secured employment there. *See* March 17, 2005 Affidavit of James E. Hurley.

15

Section 3621(b)(1) directs the Bureau to consider the "resources of the facility contemplated" in designating an inmate's place of confinement. Even if the statutory directive is to consider resources of a specific CCC, rather than the resources of CCCs generally, the statute does not specify how much weight the BOP must accord that factor, nor does the statute prevent the BOP from considering other pertinent statutory factors. *See* S.Rep. 98-225, 1984 U.S.C.C.A.N. 3182, 3325.

Applicant also argues that, contrary to representations by Respondent Warden Sherrod in his May 25, 2005 Letter to Chief Judge Babcock that Applicant's "unit team" made the decision regarding Applicant's CCC placement, Applicant's case manager and his unit counselor have advised him that they were not involved in the reconsideration decision.

The fact that two of Applicant's unit team members did not participate in the decision does not demonstrate that the BOP failed to comply with this court's May 2, 2005 Order. The May 2, 2005 Order directed the "Respondent" to reconsider Applicant's request for CCC placement. Further, the relevant statute, 18 U.S.C. §3621(b), refers only to the Bureau of Prisons, not to an offender's "unit team."

Accordingly, I recommend dismissal of Applicant's claim that Respondent failed to comply with the court's May 2, 2005 Order in 04-cv-02492-LTB-PAC because Respondent has submitted evidence to show that he reconsidered Applicant's request for CCC placement in accordance with the BOP's discretionary authority under 18 U.S.C. §3621(b).

III.

For the reasons set forth above, it is

16

**RECOMMENDED** that James Hurley's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. §2241 [filed June 24, 2005] be **DENIED** and that this action be **DISMISSED WITH PREJUDICE**.

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado.  The district judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.**

**Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of de novo review of the recommendation by the district judge and may also waive the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

Dated September 1, 2005.

BY THE COURT:

s\ Patricia A. Coan
PATRICIA A. COAN
United States Magistrate Judge